### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMEEL DEQUAN WALSTON, | : | Civil No. 3:22-cv-1782 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| PIKE COUNTY CORRECTIONAL | : | |
| FACILITY, *et al.*, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

Plaintiff Jameel DeQuan Walston ("Walston"), a pretrial detainee housed at the Pike County Correctional Facility, in Lords Valley, Pennsylvania, initiated this civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Named as Defendants are Sergeant K. Wagenhoffer, Counselor Elissa Kumburris, Warden Craig Lowe, Assistant Warden Jonathan Romance, Officer McNeil, and Counselor John English.  Presently before the Court is Defendants' Rule 12(b) motion (Doc. 14) to dismiss.  For the reasons set forth below, the Court will grant the motion.

### I.   Allegations of the Complaint

On three occasions in October, Walston alleges that Defendant McNeil made sexually charged comments to him and other inmates.  (Doc. 1, pp. 5, 11).  He also alleges that Defendant McNeil claimed he had sexual relations with Walston's mother.  (*Id.*).  Walston asserts that seven individuals witnessed this "blatant disrespect" and that he filed

unsuccessful grievances related to these incidents.  (*Id.*).  Walston claims other inmates

called him derogatory names because he did not say anything back to Defendant McNeil

and because of his sexual identity.  (*Id.*).  He believes the other Defendants "could have

helped."  (*Id.* at p. 5).

Walston does not allege that he was physically assaulted by any of the staff

members or by other inmates.  He states that he "[has] been bullied and emotionally

traumatized since the events have occurred… [and is] treated badly by peers."  (*Id.* at p. 6).

Walston seeks monetary relief because he was berated by staff and other inmates, he

requests "sufficient therapy," and requests to not be exposed to "unprofessional jailing

practices."  (*Id.*).

## II.    Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'"  *DelRio-Mocci v. Connolly Prop.

Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words,

2

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted).  A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements."  *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth.  Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted).  This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.   Discussion

### A.   Allegations of Verbal Abuse

Walston alleges that Defendant McNeil made offensive comments to him.  (Doc. 1, pp. 5, 11).  Defendant McNeil's alleged statements to Walston, without any accompanying physical injury, do not amount to malicious behavior violative of the Eighth Amendment. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) ("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment."). Walston does not assert that he suffered any physical injury or that any of the Defendants used any physical force on him.  Walston cannot state a claim that his constitutional rights were violated based upon allegations of only verbal harassment or threats.  No matter how offensive and derogatory the language that Defendant McNeil allegedly used towards Walston, that alone does not give rise to a constitutional claim.  Walston's claims of verbal abuse are not cognizable under § 1983 and, therefore, will be dismissed.  *See Aleem-X v.*

*Westcott*, 347 F. App'x 731 (3d Cir. 2009) ("Verbal abuse of a prisoner, even of the lewd variety [ ], is not actionable under § 1983.").

### B.    Lack of Personal Involvement of Defendants Wagenhoffer, Kumburris, Lowe, Romance, and English

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  *See* 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior."  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil

rights action must have personal involvement in the alleged wrongs. . . .  Personal

involvement can be shown through allegations of personal direction or of actual knowledge

and acquiescence."  *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362

(1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must

be made with appropriate particularity in that a complaint must allege the particulars of

conduct, time, place, and person responsible.  *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at

1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge

or involvement in depriving the plaintiff of his rights is insufficient to establish personal

involvement.  *Rode*, 845 F.2d at 1208.  A claim of a constitutional deprivation cannot be

premised merely on the fact that the named defendant was the prison warden, or a prison

supervisor, when the incidents set forth in the complaint occurred.  *Id.* at 1207.

The complaint does not specify what role, if any, Defendants Wagenhoffer,

Kumburris, Lowe, Romance, and English played in the alleged denial of Walston's rights.

Under the most liberal construction, Walston's complaint fails to state a claim for relief

against these Defendants.  The complaint lists Defendants Wagenhoffer, Kumburris, Lowe,

Romance, and English as parties to this action but fails to allege any personal involvement

and fails to set forth any factual averments that identify how these Defendants were

involved in the alleged wrongdoing.  (*See generally* Doc. 1).  There is no specific mention of

these Defendants throughout the complaint.  (*See id.*).  The only reference to other

Defendants is Walston's assertion that they "could have helped."  (Doc. 1, p. 5).  Based

upon the above legal standards, it is clear that any claims against Defendants Wagenhoffer,

Kumburris, Lowe, Romance, and English are subject to dismissal based on Walston's

failure to set forth any factual allegations against them in the complaint.  Without such

factual allegations, it is impossible to conclude that Defendants Wagenhoffer, Kumburris,

Lowe, Romance, and English deprived Walston of any constitutional rights.  *See Hudson v.*

*City of McKeesport*, 244 F. App'x 519, 522 (3d Cir. 2007) (affirming dismissal of defendant

because complaint did not provide any basis for a claim against him).

To the extent that Walston seeks to hold any of these Defendants liable based on

their supervisory roles, this claim also fails.  It is well-established that officials may not be

held liable for unconstitutional conduct of their subordinates under a theory of *respondeat*

*superior*.  *See Rode*, 845 F.2d at 1207.  Accordingly, insofar as Walston's claims against

Defendants Wagenhoffer, Kumburris, Lowe, Romance, and English rely on a *respondeat*

*superior* theory of liability, they are entitled to dismissal from this action.

### C.   Qualified Immunity

Even if Walston had stated a colorable constitutional claim, Defendants, in their

individual capacities, are entitled to qualified immunity from this claim for damages.  In order

to establish a civil rights claim, Walston must show the deprivation of a right secured by the

United States Constitution or the laws of the United States.  However, government officials

performing "discretionary functions," are insulated from suit if their conduct did not violate a

"clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of the proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555

8

U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first).  As stated, the Court finds that Walston failed to set forth any cognizable claims against the Defendants and failed to establish the violation of a constitutional right.  Therefore, Defendants are protected from liability by qualified immunity.

### D.    Official Capacity Claims

Lastly, Defendants argue that, to the extent any of Walston's claims include official capacity claims, they must fail.  (Doc. 15, p. 11).  Walston does not name Pike County as a Defendant.  *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978).  To assert a Section 1983 claim against Pike County by way of an official capacity claim against a county employee, Walston must identify a policy or custom fairly attributable to the municipality that caused him constitutional injury.  *Id.* at 690-91.  The complaint does not mention the existence of a policy or custom at the Pike County Correctional Facility.  Absent such allegations, Walston has failed to plausibly plead facts showing that the named Defendants are decision-makers endowed with authority to promulgate or establish an official custom or policy.  Moreover, Walston clarifies that the complaint "did not state a Monell claim."  (Doc. 17 ¶ 14).  Therefore, any potential official capacity claims against the Defendants will be dismissed.

## IV.   **Leave to Amend**

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  For the reasons set forth above, Walston's claims are factually and legally flawed; thus, the Court concludes that curative amendment would be futile.

## V.   **Conclusion**

The Court will grant Defendants' motion (Doc. 14) to dismiss.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: April __14__, 2023